# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. EMILY THEODORA BALL,<br>an individual,<br>              Plaintiff,<br>vs.<br><br>1. AIRCO SERVICE, INC.,<br>a domestic for profit business corporation,<br>              Defendant. | Case No. 17-CV-00657-GKF-JFJ<br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED FOR**<br>**THE FIRM** |

## COMPLAINT

**COMES NOW**, the Plaintiff, Emily Ball ("Plaintiff"), through her attorney of record, Charles C. Vaught of *Armstrong & Vaught, P.L.C.* and hereby brings discrimination and retaliation claims pursuant to the Age Discrimination in Employment Act of 1967, as amended, *et seq.* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, the Americans with Disabilities Act of 1990, as amended, *42 U.S.C § 2000e(b)* (the "ADA"), and a wage claim pursuant to Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (the "FLSA" or "the Act"), against AirCo Service, Inc. ("Defendant") for violations of those statutes committed by Defendant.

## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367(a). In particular, jurisdiction is premised on violations of Title VII of the Civil Rights Act, the ADEA, the ADAAA and the FLSA.

2. Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, and compensatory and punitive damages are sought pursuant to 42 U.S.C. § 2000e, *et seq.*

1

3. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil Procedure and the above statutes.

4. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Northern District of Oklahoma, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391(b), because the unlawful employment practices alleged herein arose in this judicial district.

5. Plaintiff is, and was at all times relevant hereto, a resident of the State of Oklahoma, residing in Broken Arrow, Tulsa County, Oklahoma.

6. The acts and/or omissions giving rise to this lawsuit occurred in Tulsa County, State of Oklahoma.

7. In conformance with Title VII statutory prerequisites, Plaintiff submitted pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC") less than 300 days after the events described herein occurred. Subsequently, Plaintiff submitted a Charge of Discrimination, prepared by the EEOC, to the EEOC. The EEOC completed its investigation and issued a Notice of Right to Sue on September 7, 2017 (attached as Exhibit A hereto and hereby incorporated by reference as though fully set forth herein), which was received by Plaintiff via regular mail on September 9, 2017. Plaintiff has timely filed her *Complaint* within 90 days of her receipt of the Notice of Right to Sue from the EEOC.

8. Defendant is an employer as defined by Title VII and the ADAAA, in that it was a public entity engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Additionally, Defendant is an employer as defined by the ADEA in that it employed in excess of 20 employees who worked for the company for at least twenty calendar weeks for

the relevant periods at issue. Defendant is an employer, as that phrase is used under the FLSA, in that it is an enterprise employing more than 2 employees and has an annual dollar volume of sales in excess of $500,000.00.

9. Plaintiff was, at all times relevant hereto, an employee as defined by Title VII, the ADEA, the ADAA and the FLSA, in that she was employed by an employer.

## OPERATIVE FACTS

10. Plaintiff is a member of the following protected classes, to wit: an individual over the age of 40; a disabled individual; a person who observes and practices religious beliefs; and an individual who complained of discrimination during her employment with an employer.

11. With regards to her disability, Plaintiff has suffered from Dyslexia throughout her entire life. Dyslexia impairs Plaintiff's ability to learn, read, think and concentrate, all of which are considered major life activities under the ADAAA. Accordingly, under the ADAAA, Plaintiff has a disability, a record of an impairment or was treated by Defendant's agents and/or employees as though she was disabled during her employment.

12. Plaintiff was hired by Defendant on or about March 4, 2014 as a Sales Coordinator. Subsequently, Plaintiff was promoted to Customer Service / Plumbing Assistant, received numerous merit-based pay raises, and was responsible for opening two additional business locations, one in Oklahoma City and another on Grand Lake, for Defendant.

13. Plaintiff advised Defendant of her Dyslexia upon hiring.

14. Plaintiff was subjected to several discriminatory comments on the basis of her age. Non-exclusive examples of those comments are, as follows:

    a. As Plaintiff was leaving for lunch on March 1, 2016, Amy Grogan, Office Manager, said "see ya old lady who likes Hillary just leave now, oh and have a good lunch." Everyone around laughed.

3

b. March 8, 2016 was International Women's Day. Plaintiff was reading about International Women's Day when Ms. Grogan asked, "Why do you old people support this stupid shit?"

c. On April 15, 2016, Ms. Grogan introduced Plaintiff to Linda LNU, a new dispatcher, by stating "You're a great grandma now Emily. You're still the oldest in the office. Linda has grandbabies so that makes you the great grandma now."

d. On April 19, 2016, Plaintiff was sent flowers for her birthday. Ms. Grogan saw the flowers and stated, "Geez this office smells like an old lady, like a funeral home, so gross, take those home."

e. On May 21, 2016, Plaintiff was on her way to get coffee when Ms. Grogan said, "Your hair looks bad old lady, your grey roots are showing."

f. On June 3, 2016, Plaintiff was asked to work the Airco booth from 10:00 a.m. to 8:00 p.m. at a home show. As Plaintiff was packing up to go home, Ms. Grogan said, "I have no clue how you, at your age, can work so much. I'm exhausted and I'm twice as young as you."

g. On June 30, 2016, Ms. Grogan shouted at Plaintiff to "turn [her] hearing aid up" when she was speaking to her. However, Plaintiff does not wear hearing aids.

h. On July 1, 2016, Ms. Grogan called Plaintiff in to a meeting. During this meeting, Ms. Grogan stated that Airco was disappointed with her work. Ms. Grogan complained that Plaintiff was not answering the phones fast enough and she felt Plaintiff "might be too old to handle the work load." As Plaintiff was

told she was going to be written up, she requested Mr. Boyce's presence. Ms. Grogan then stormed out of the conference room and Plaintiff never received the write-up.

i. On July 6, 2016, Plaintiff did not hear Ms. Grogan shouting at her from across the room. Ms. Grogan approached Plaintiff and asked her if she had "fresh batteries in [her] hearing aid, I'm talking to you!"

j. On August 31, 2016 Plaintiff returned to work after a vacation. Ms. Grogan greeted Plaintiff by asking "How was vacation, old girl?"

k. On September 9, 2016, Rick Kellenberger, Service Manager, informed employees that there was a new way to input calls. When Plaintiff asked questions regarding the new method, Ms. Grogan responded by stating, "You're too old to learn the new ways of doing things."

l. On September 12, 2016, Ms. Grogan was informing the employees that another employee would be late. During her statement, Ms. Grogan made it a point to say, "Emily, can you hear me?"

m. On September 21, 2016, Ms. Grogan informed Plaintiff that she "[watched] her all day old girl" and that she "was not here for long, you're moving."

n. On September 23, 2016, Ms. Grogan held a staff meeting. Plaintiff asked for notes from the meeting due to an intercom interruption keeping her from hearing all of the information. Ms. Grogan responded to Plaintiff's request by stating, while laughing, "why because you're old? Dyslexic?"

o. On October 26, 2016, Ms. Grogan asked Plaintiff, "How's Hillary's emails today? Old women, will they ever learn?"

5

p. On October 27, 2016, two employees were absent from work and Ms. Grogan looked at Plaintiff and asked that she work and be "young like us and follow along. Get your hearing aid and glasses ready, old lady."

q. On October 29, 2016, Ms. Grogan told Plaintiff that she was "in danger" and to "say [her] prayers, old girl."

15. Plaintiff was subjected to several discriminatory comments based on her disability. Non-exclusive examples of those comments are, as follows:

    a. On January 28, 2016, Plaintiff was at her desk with Ms. Grogan approached her and stated "If I had Emily's teeth and disability I'd kill myself, can you even spell disability Emily?"

    b. On July 7, 2016, Ms. Grogan told Plaintiff "We dyslexia an account, Emily, and we're screwed, got it?"

    c. On August 10, 2016 Plaintiff was entering new account information with Ms. Grogan present when Ms. Grogan told her to "try again Emily, your dyslexia is all over that phone number, I'm watching you."

    d. On November 2, 2016, Ms. Grogan told Plaintiff that she would "die if [she] didn't know how to spell" and that it was "so embarrassing."

    e. On that same day, Alex Wynn, one of Plaintiff's co-workers, asked the spelling of a word. Ms. Grogan exclaimed, "don't ask Emily, that's for sure!"

16. Plaintiff was subjected to several discriminatory comments regarding her religion. Non-exclusive examples of those comments are, as follows:

    a. On February 10, 2016, Plaintiff returned to work after attending a church service for Ash Wednesday. Ms. Grogan approached Plaintiff and said, "man

you look stupid, wash that crap off!" Later that morning, Ms. Grogan told Plaintiff that it "looks like you put a cigarette out on your forehead, I can't look at you anymore."

   b. On June 30, 2016 Brad Bennett, in Plumbing, was searching through Plaintiff's file cabinet when he stated, "you're a Catholic, a Democrat, Dyslexic who can't file worth shit. How do you smile all day?"

17. On January 25, 2016, Plaintiff approached Ms. Grogan regarding her not being paid overtime, even though David Fehnel, Plumbing Manager, had previously signed off on it. Ms. Grogan stated that Plaintiff will never be paid overtime, regardless of whether Mr. Fehnel approved it.

18. On February 11, 2016, Plaintiff spoke with John Boyce, Owner, regarding her unpaid overtime and the discriminatory comments by Ms. Grogan. Mr. Boyce assured Plaintiff that he would look into the unpaid overtime issue and that Ms. Grogan was "mean."

19. On February 14, Plaintiff spoke to Angie Falzone, Human Resources, to report Ms. Grogan's behavior. Ms. Falzone stated that she would speak with Ms. Grogan.

20. On February 16, 2016, Ms. Grogan called all of the employees together for an impromptu office meeting. During the meeting, Ms. Grogan singled Plaintiff out by stating. "Emily, if you can't multitask, ol' girl, here at Airco, like type a job and answer the phones, then you're not wanted here."

21. February 17, 2016 was Random Act of Kindness Day. While Plaintiff was circling the day on her calendar, Ms. Grogan approached Plaintiff and stated "I'll try and kindly not kill you today Emily."

22. On May 5, 2016, Plaintiff's lunch schedule was changed by Ms. Grogan from the usual time of 11:15 to 12:15 p.m. so that Ms. Grogan could go to lunch with one of Plaintiff's co-workers.

When Plaintiff explained that she needed her old lunch schedule to speak with her children, as they lived in different time zones, Ms. Grogan's responded by stating "sucks to be you."

23. On June 3, 2016, Plaintiff asked Ms. Grogan about her unpaid overtime. Ms. Grogan did not respond.

24. Plaintiff received a pay raise from Tom and John Boyce in early June of 2016. On June 9, 2016, Ms. Grogan approached Plaintiff as she was sending a thank you message to John Boyce. Ms. Grogan saw the message and exclaimed, "You got a raise? That's not what I told them to do!"

25. On August 31, 2016, Plaintiff reported, again to John Boyce, the discriminatory comments regarding her age and disability Ms. Grogan was making in the workplace. Mr. Boyce said he would speak with Ms. Grogan.

26. On September 6, 2016, Plaintiff met with Tom Boyce and, again, reported the ongoing discrimination by Ms. Grogan. Plaintiff also asked to show Mr. Boyce examples of the discrimination by way of the posters and documents Plaintiff had. Mr. Boyce stated he would "look at them tomorrow." On September 7, 2016, Mr. Boyce was "too busy" to meet with Plaintiff and told her he would inform her when he was free.

27. On September 7, 2016, Plaintiff showed the poster and documentation she had of the discrimination to Mr. Fehnel.

28. On September 9, 2016, Plaintiff heard Donna Bennett, Accounting Manager, advise Plaintiff's co-workers, Desiree LNU and Michelle Neal, an employee in the Accounting Department, that she would not give Plaintiff the "plumbing P.O. job" even though that was one of the duties of Plaintiff's position.

29. In mid-September of 2016, Ms. Grogan informed Tom Boyce that Plaintiff would be moving away from Oklahoma as her sons no longer lived here. Due to this, Mr. Boyce stopped talking to Plaintiff or providing work for her to do. Additionally, Mr. Boyce sent Plaintiff a text message inquiring as to whether she intended to move. On September 22, 2016, Plaintiff spoke with Mr. Boyce via telephone regarding Ms. Grogan's statement of her "moving" and informed him that she had no intention of moving from Oklahoma. Mr. Boyce said that if Plaintiff had a problem, she come speak to him immediately. Plaintiff reminded Mr. Boyce that she had attempted to speak with him regarding her issues, but has been ignored.

30. On September 29, 2016, Plaintiff spoke with Ms. Falzone in HR regarding Ms. Grogan's ongoing behavior.

31. On October 7, 2016, Plaintiff met with Dick Rago, Operations Director, for the third time regarding Ms. Grogan's discriminatory actions. Mr. Rago informed Plaintiff that he has discussed Ms. Grogan's behavior with John and Tom Boyce and that they will do something to address it.

32. On October 17, 2016, Plaintiff met with Tom Boyce and Ms. Grogan regarding instructions Plaintiff received from Mr. Fehnel while he was on vacation. Mr. Boyce stated that Plaintiff is not to perform those assignments because it would be like "drinking through a straw." Mr. Boyce informed Plaintiff that a co-worker, Alex Wynn, would perform the assignments Mr. Fehnal had given her. Plaintiff questioned this, to which Mr. Boyce simply stated, "what [Ms. Grogan] says, goes." During this meeting Plaintiff attempted to address Ms. Grogan's discriminatory conduct but Mr. Boyce cut Plaintiff off and stated, "it is not up for discussion" and requested that Plaintiff leave.

33. On November 8, 2016, Plaintiff was terminated from employment by Tom Boyce, who stated at the time of the termination that Plaintiff "just won't leave things alone."

34. Plaintiff believes that she was discriminated against on the basis of her age in violation of the Age Discrimination in Employment Act of 1967.

35. Plaintiff believes that she was discriminated against due to her disability in violation of the Americans with Disabilities Act.

36. Plaintiff believes that she was discriminated against on the basis of her religion in violation of the Title VII of the Civil Rights Act of 1964.

37. Plaintiff believes that he was retaliated against for her numerous complaints of disparate treatment to HR and Mr. Boyce, in violation of Title VII of the Civil Rights Act of 1964.

38. Throughout her employment, Plaintiff was not classified as an exempt employee under the FLSA.

39. Throughout her employment, Plaintiff regularly performed work in excess of 40 hours per week but was not compensated for the work she performed in excess of 40 hours in a given workweek.

40. More specifically, Plaintiff worked Monday through Friday at Defendant's office performing her normal assigned duties. On Fridays, Saturdays and Sundays, and during holidays, Plaintiff worked a booth Defendant had set up at Costco to solicit business for Defendant. Plaintiff was paid straight time for all hours she worked.

### FIRST CLAIM
### (DISCRIMINATION IN VIOLATION OF THE ADA)

41. Plaintiff incorporates and re-alleges the above paragraphs as though fully set forth herein and would further state, as follows:

42. As a result of her dyslexia, Plaintiff is disabled pursuant to the ADAAA.

43. In the alternative, Defendant perceived Plaintiff as disabled or the Plaintiff had record of such impairment.

44. Plaintiff is qualified to perform, with reasonable accommodations, the essential functions of her position with Defendant.

45. Defendant violated the ADAAA by failing to make reasonable accommodations for Plaintiff's known physical limitations.

46. Defendant violated the ADAAA by permitting its agents and/or employees to create a hostile work environment regarding Plaintiff's disability.

47. Defendant further violated the ADAAA by terminating Plaintiff's employment because of her disability.

48. By and through, but not limited to, the events described herein, Plaintiff's terms and conditions of employment were adversely affected by Defendant's refusal to make reasonable accommodations for Plaintiff's known physical limitations, the hostile work environment Defendant's agents and/or employees created regarding Plaintiff's disability, and/or the termination of Plaintiff's employment because of her disability.

49. By and through, but not limited to, the actions described herein, Defendant has violated the ADAAA, *42 U.S.C.§§ 12101, et seq.*

50. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

51. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

52. Plaintiff has been injured by this discrimination, and is entitled to compensatory and punitive damages and any other damages available pursuant to the ADA.

**WHEREFORE**, premises considered, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; enjoin the Defendant from engaging in such conduct; enter a judgment for Plaintiff in an amount equal to the actual damages, compensatory damages, punitive damages and statutory penalties incurred for Defendant's violation, all in excess of $100,000.00, plus interest, costs and attorney fees; and grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## SECOND CLAIM
## (DISCRIMINATION IN VIOLATION OF THE ADEA)

53. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state, as follows:

54. Plaintiff was a member of a protected class, to wit: an individual over 40-years of age.

55. Plaintiff was subjected to slurs, insults, jokes, ridicule and intimidation of an ageist nature from her immediate supervisor during her employment with Defendant.

56. The ageist conduct was unwelcome.

57. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and created a work environment that was permeated with abusive or hostile behavior designed to ridicule and harass Plaintiff on account of her age.

58. Plaintiff perceived the working environment to be abusive and hostile.

59. A reasonable person in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

WHEREFORE, premises considered, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; enjoin the Defendant from engaging in such conduct; enter a judgment for Plaintiff in an amount equal to the actual damages, compensatory damages, punitive damages and statutory penalties incurred for Defendant's violation, all in excess of $100,000.00, plus interest, costs and attorney fees; and grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

### THIRD CLAIM
### (TITLE VII RELIGIOUS DISCRMINATION)

60. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state, as follows:

61. Plaintiff was a member of a protected class, to wit: an individual who observes and practices religious beliefs.

62. Plaintiff was subjected to slurs, insults, jokes, ridicule and intimidation of a religious nature from her immediate supervisor during her employment with Defendant.

63. The conduct was unwelcome.

64. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and created a work environment that was permeated with abusive or hostile behavior designed to ridicule and harass Plaintiff on account of her religious beliefs.

65. Plaintiff perceived the working environment to be abusive and hostile.

66. A reasonable person in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

WHEREFORE, premises considered, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: declare the conduct engaged in by the Defendant

to be in violation of Plaintiff's rights; enjoin the Defendant from engaging in such conduct; enter a judgment for Plaintiff in an amount equal to the actual damages, compensatory damages, punitive damages and statutory penalties incurred for Defendant's violation, all in excess of $100,000.00, plus interest, costs and attorney fees; and grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## FOURTH CLAIM
### (RETALIATION IN VIOLATION OF THE ADAAA)

67. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state, as follows:

68. Plaintiff engaged in protected activity by reporting the discrimination she was subjected to regarding her disability to Defendant.

69. Plaintiff had a reasonable, good-faith belief that she was subjected to discrimination on the basis of her disability and acted in a reasonable manner in opposing said discrimination.

70. Plaintiff was subjected to materially adverse actions by Defendant, including removal of job assignments and termination of her employment, in retaliation for opposing the disability discrimination she was subjected to.

71. Plaintiff's job assignments were removed and her employment was terminated because of her protected opposition to disability discrimination.

WHEREFORE, premises considered, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; enjoin the Defendant from engaging in such conduct; enter a judgment for Plaintiff in an amount equal to the actual damages, compensatory damages, punitive damages and statutory penalties incurred for Defendant's violation, all in

excess of $100,000.00, plus interest, costs and attorney fees; and grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## FIFTH CLAIM
## (RETALIATION IN VIOLATION OF TITLE VII)

72. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state, as follows:

73. Plaintiff engaged in protected activity by reporting the discrimination she was subjected to regarding her age and religious beliefs to Defendant.

74. Plaintiff had a reasonable, good-faith belief that she was subjected to discrimination on the basis of her age and religious beliefs and acted in a reasonable manner in opposing said discrimination.

75. Plaintiff was subjected to materially adverse actions by Defendant, including removal of job assignments and termination of her employment, in retaliation for opposing the age and religious discrimination she was subjected to.

76. Plaintiff's job assignments were removed and her employment was terminated because of her protected opposition to age and religious discrimination.

WHEREFORE, premises considered, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; enjoin the Defendant from engaging in such conduct; enter a judgment for Plaintiff in an amount equal to the actual damages, compensatory damages, punitive damages and statutory penalties incurred for Defendant's violation, all in excess of $100,000.00, plus interest, costs and attorney fees; and grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## SIXTH CLAIM
## (VIOLATION OF THE FAIR LABOR STANDARDS ACT)

77. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state, as follows:

78. At all times relevant to this cause of action, Plaintiff was employed by Defendant and regularly worked in excess of forty (40) hours per week in performance of duties assigned by Defendant.

79. Plaintiff is not exempt from the overtime compensation requirements of the FLSA under any exemptions set forth in the Act.

80. Defendant has a statutory duty to maintain accurate time records covering all hours Plaintiff worked and to compensate Plaintiff at a rate of one and one-half (1 ½) times her regular hourly wages for all hours worked in excess of forty in one week.

81. Defendant's failure to properly compensate Plaintiff for overtime worked was a knowing, willful and intentional violation of the FLSA.

**WHEREFORE**, premises considered, Plaintiff prays that the Court adjudge Defendant, in violation of the FLSA; enjoin Defendant from any further violations of the Act pursuant to Section 17 of the FLSA; require that Defendant maintain accurate and complete time records on all non-exempt employees; compensate Plaintiff for all hours worked in excess of forty (40) hours per week in accordance with the Act; and, after adjudication of the amount due to Plaintiffs, that the Court enter final judgment against Defendant in sums respectively due to her for unpaid wages, with prejudgment interest thereon, liquidated damages, attorney fees and costs pursuant to Section 16(b) of the FLSA; and grant such other and further relief as the Court may deem to be just and proper.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: *s/ Charles C. Vaught*
**Charles C. Vaught, OBA #19962**
2727 East 21st Street, Suite 505
Tulsa, OK 74114
(918) 582-2500 – *telephone*
(918) 583-1755 – *facsimile*
***Attorney for Plaintiff***

EEOC Form 161 (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Emily T. Ball<br>5304 S. Hickory Ave.<br>Broken Arrow, OK 74011 | From: Oklahoma City Area Office<br>215 Dean A. McGee Avenue<br>Suite 524<br>Oklahoma City, OK 73102 |

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 564-2017-00254 | Marilyn S. Koshiway,<br>Investigator | (405) 231-4359 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Marilyn S. Koshiway*            September 7, 2017

Enclosures(s)     Holly Waldron Cole,     *(Date Mailed)*
           Area Office Director

cc:   John Boyce<br>Owner<br>Airco Service<br>11331 E. 58th St.<br>Tulsa, OK 74133

Received on 9-9-17

**EXHIBIT A.**